UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN J. MILLER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:14-CV-155 NAB ) |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

The following opinion is intended to be the opinion of the Court judicially reviewing the denial of John Miller's ("Miller") application for disability insurance benefits under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 8.] The Court has reviewed the parties' briefs and the entire administrative record, including the hearing transcript and the medical evidence. The Court heard oral argument in this matter on December 9, 2014. Based on the following, the Court will affirm the Commissioner's decision.

**I.      Issues for Review**

Miller presents four errors for review. First, Miller asserts that the administrative law judge ("ALJ") erred in determination of his residual functional capacity ("RFC"). Second, he asserts that the ALJ failed to afford sufficient weight to his treating physicians, Dr. John Mohart and Dr. Thomas Davis. Third, Miller states that the ALJ erred in assessing his credibility. Fourth, Miller contends that the vocational expert testimony did not constitute substantial

evidence. The Commissioner contends that that the ALJ's disability determination is supported by substantial evidence in the record as a whole.

## II.     Standard of Review

This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## III. Discussion

### A. Opinion Evidence

First, the court will address the ALJ's assessment of the medical opinion evidence submitted by Dr. Thomas Davis and Dr. John Mohart. The ALJ found that Miller had the severe impairments of diabetes mellitus, right great toe amputation, obesity, history of coronary artery disease, history of chronic obstructive pulmonary disease, and history of substance abuse/addiction. (Tr. 13.)

On June 28, 2011, Dr. Davis opined that Miller had diabetes mellitus with neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station. (Tr. 435.) Dr. Davis opined that Miller could sit, stand, and walk for 15 minutes in an 8- hour workday, could not lift any weight, experienced significant manipulative limitations in both hands, was limited in balancing even when standing or walking on level terrain, and that he could never reach above his head or stoop. (Tr. 437-438.) Dr. Davis also opined that Miller's foot ulcer and neuropathy would produce pain and that the pain would preclude persisting or focusing on simple tasks on a sustained full-time work schedule. (Tr. 439.) Finally, Dr. Davis stated that Miller's impairments would cause him to be late or absent from work three or more times per month, require more than 3 breaks per day, and Miller would need to lie down or take a nap during the work day. (Tr. 439-440.) The ALJ gave nominal weight to Dr. Davis' opinion, because the record did not support the extreme limitations contained in the opinion. (Tr. 18.)

Dr. Mohart completed two physical medical source statements for Miller in August 2011 and January 2013. (Tr. 441-444, 474-477.) The opinions were substantially identical. Dr.

Mohart opined that Miller could sit, stand, and walk for 2 hours in an 8-hour work day; occasionally lift and carry up to 10 pounds; and occasionally reach above his head or stoop. (Tr. 441-442, 474-475.) He also opined that Miller's impairments would cause him to be late or absent from work three or more times per month and that Miller would need to take more than 3 breaks during a normal 8-hour workday. (Tr. 443-44, 476-477.) The ALJ gave nominal weight to Dr. Mohart's opinion, because she stated the level of limitation in the opinion was contradicted by the lack of ongoing cardiac care and routine medical examinations showed unremarkable cardiac findings. (Tr. 18.)

All medical opinions, whether by treating or consultative examiners are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c); SSR 96-2p; *see also Hacker*, 459 F.3d at 937. "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that

the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000).

In making a disability determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant evidence in the record." 20 C.F.R. § 404.1527(b); *see also Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009). "[T]he ALJ is not qualified to give a medical opinion but may rely on medical evidence in the record." *Wilcockson v. Astrue*, 540 F.3d 878, 881 (8th Cir. 2008). The ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). The RFC determination is based on all of the evidence in the medical record, not any particular doctor's treatment notes or medical opinion. *Pearsall*, 274 F.3d at 1217.

In this case, the Court finds that the ALJ did not err is assigning nominal weight to the doctors' opinions. The ALJ is required to consider all of the factors listed in 20 C.F.R. § 404.1527(c). While the ALJ did not perform a "factor-by-factor" analysis of the doctors' opinion evidence, she stated that she considered those factors and explained her rationale in a manner that allows the Court to follow the line of reasoning, including the amount of weight given to the evidence. (Tr. 17.); *see Nishke v. Astrue*, 878 F.Supp.2d 958, 984 (E.D. Mo. 2012) (ALJ's failure to perform factor-by-factor analysis of opinion evidence in written opinion not erroneous). The ALJ mentions important factors throughout the opinion, including the treating and examining relationship between Miller and the doctors, the consistency with the record as a whole, and objective findings that would support or detract from the opinion. (Tr. 13-15, 17-18.) The significant limitations contained in the doctors' opinions contradict the objective medical

5

findings, and at times, Miller's activities of daily living. Therefore, the ALJ did not err in the analysis of opinion evidence.

**B.     Credibility Determination**

Next, Miller contends that the ALJ failed to conduct a proper credibility analysis, because the credibility finding was perfunctory, nonspecific, and deprives the Court of a reviewable finding. In considering subjective complaints, the ALJ must fully consider all of the evidence presented, including the claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as:

> (1) The claimant's daily activities;
>
> (2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) Any precipitating or aggravating factors;
> (4) The dosage, effectiveness, and side effects of any medication; and
> (5) The claimant's functional restrictions.

*Polaski v. Heckler*, 725 F.2d 1320, 1322 (8th Cir. 1984). It is not enough that the record contains inconsistencies; the ALJ is required to specifically express that he or she considered all of the evidence. *Id.* "Although an ALJ may not discredit a claimant's subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006).

In this case, the ALJ discounted Miller's credibility, because of lack of more clinically significant findings on longitudinal examinations, failure to seek treatment, failure to maintain compliance with diet and medication regimen regarding his diabetes, failure to stop smoking,

and activities of daily living that suggest a RFC contradictory to a finding of disability. (Tr. 17-18.) The ALJ could take all of those factors into consideration when assessing Miller's credibility. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (ALJ can disbelieve subjective complaints if there are inconsistencies in the evidence as a whole and lack of corroborating evidence is just one of the factors the ALJ considers); *Ramirez v. Barnhart*, 292 F.3d 576, 582 (8th Cir. 2002) (ALJ can consider claimant's failure to take medication and follow prescribed treatment in evaluating credibility); *Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) (ALJ could consider that claimant functioned as the primary caretaker for her home and two small children); *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) ("[I]mpairments that are controllable or amenable to treatment, including certain respiratory problems, do not support a finding of disability, and failure to follow a prescribed course of remedial treatment, including the cessation of smoking, without good reason is grounds for denying an application for benefits."). Based on the foregoing, the ALJ considered several factors in evaluating Miller's credibility and the ALJ's credibility determination was supported by substantial evidence in the record as a whole.

### C. RFC Determination

Miller also contends that the RFC determination failed to include sufficient limitations arising from his impairments, including the limitations suggested by Miller's doctors and limitations with concentration, persistence, or pace. RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[1] SSR 96-8p,

---

[1] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). RFC is a medical question. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). "A disability claimant has the burden to establish [his] RFC." *Eichelberger*, 390 F.3d at 591 (citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)).

In this action, the ALJ found that Miller had the RFC to perform light work, except that he could not climb ropes, ladders, or scaffolding; only occasionally stoop or crouch; must avoid fumes, odors, dusts, gases, and heights; and he could understand, remember, and carry out at least simple instructions, and non-detailed tasks. (Tr. 17.) After a review of the record as a whole, the Court finds that the ALJ's RFC determination is supported by substantial evidence. First, other than Miller's statements in his adult function report that he had to write reminders regarding his medication and other obligations, there is no other evidence in the record about any limitations of concentration, persistence, or pace. (Tr. 182, 184-185, 187.) At step three of the disability analysis, the ALJ credited Miller's statements, but found there was no evidence in the record to find anything more than moderate limitations in those areas. (Tr. 16.) Second, the ALJ's determination at step three of the disability analysis that Miller had moderate limitations in concentration, persistence, or pace did not require more substantial limitations than those listed in the RFC determination at step 4, because "each step in the disability determination entails a separate analysis and legal standard." *LaCroix v. Barnhart*, 465 F.3d 881, 888, n. 3 (8th Cir. 2006). The evaluation of mental impairments at steps two and three of the disability

analysis is not an RFC assessment, but a determination of the severity of mental impairments. *Morris v. Colvin*, No. 4:12-CV-2129 HEA, 2014 WL 636355 at *4 (E.D. Mo. Feb. 18, 2014). "The ALJ's step-four RFC determination requires a more detailed assessment" than the analysis at steps two and three. *Id.* Finally, moderate limitations in concentration persistence, or pace would not automatically prevent Miller from functioning in a competitive work environment. *See e.g. Blackburn v. Colvin*, 761 F.3d 853, 859-860 (8th Cir. 2014) (ALJ found moderate impairments in maintaining concentration, persistence, and pace and claimant found not disabled).

### D. Vocational Expert Testimony

For the first time, at oral argument, Miller alleges that the vocational expert testimony does not constitute substantial evidence, because the ALJ did not present a limitation regarding his moderate impairments in concentration, persistence, or pace to the vocational expert. The Commissioner admits that ALJ's hypothetical only included a limitation to unskilled work, however, she asserts that this error does not require reversal. At the administrative hearing, the ALJ asked the vocational expert what jobs Miller could perform with the following limitations: light exertional work; avoid ropes, ladders, and scaffolding; avoid hazardous heights; avoid fumes, odors, dust, and gases; occasionally stoop and crouch; and limited to unskilled work. (Tr. 50-51.) The vocational expert responded that Miller could perform his past relevant work as a production assembler and other work as an order caller, mail sorter, and cashier II. (Tr. 51-52.) The ALJ's RFC determination states, however, Miller had the RFC to perform light work, except that he could not climb ropes, ladders, or scaffolding; only occasionally stoop or crouch; must avoid fumes, odors, dusts, gases, and heights; and he could understand, remember, and carry out at least simple instructions and non-detailed tasks. Miller contends that unskilled work and the

9

limitation regarding his ability to follow at least simple instructions and non-detailed tasks are not the same; therefore, the vocational expert's testimony was not based on substantial evidence.

"Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). "[T]he ALJ's hypothetical question must include the impairments that the ALJ finds are substantially supported by the record as a whole." *Id.* "However, the hypothetical need only include those impairments which the ALJ accepts as true." *Grissom v. Barnhart*, 416 F.3d 834, 836 (8th Cir. 2005). A "hypothetical question posed to a vocational expert must capture the concrete consequences of claimant's deficiencies." *Pickney*, 96 F.3d at 297.

The ALJ did err in failing to give the vocational expert the instructions that Miller can perform at least simple instructions and non-detailed tasks. In two factually analogous cases, however, the Court has previously found that such error was harmless. *See Wilson v. Colvin,* No. 4:13-CV-1533 AGF-NAB, 2014 WL 4741091 (E.D. Mo. Sept. 23, 2014); *Areno v. Colvin*, No. 4:12-CV-1669 DDN, 2013 WL 5291754 (E.D. Mo. Sept. 19, 2013). In *Wilson and Areno*, the Court held jobs requiring Level 2 reasoning were not inconsistent with the RFC determination, which limited the plaintiffs to at least simple instructions and non-detailed tasks and simple instructions and non-detailed tasks, respectively. In this action, the vocational expert opined that Miller could perform two jobs that required Level 2 reasoning- production assembler and order caller. Level 2 reasoning means the employee applies commonsense understanding to carry out detailed, but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations. *See* DICOT 70.687-010, 1991 WL 679074; DICOT 209.667-014, 1991 WL 671807. Because the subsequently included RFC limitations are at least, not inconsistent with work requiring Level 2 reasoning, which includes

order callers and production assemblers, substantial evidence supports the ALJ's finding that Miller could perform work as an order caller or production assembler. *Id.* at 15.

Moreover, the ALJ's finding that Miller had moderate impairments in concentration, persistence, or pace did not presuppose a finding that Miller could only perform jobs with Level 1 reasoning. Level 1 reasoning requires the worker to "apply commonsense understanding to carry out simple one or two step instructions." *See* DICOT App. C, 1991 WL 688702. The RFC determination states that Miller had the ability to "understand, remember, and carry out *at least* simple instructions and non-detailed tasks." (Tr. 17.) (emphasis added). Neither the ALJ's hypothetical nor the RFC determination limited Miller to simple one or two step instructions that would indicate Miller would be unable to perform jobs only at a Level 1 reasoning level. Further, "the level 2 reasoning definition is an upper limit across all jobs in the occupational category, not a requirement of every job in the category." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). "DOT [2] definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir. 2007). "The DOT cautions itself that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities. In other words, not all jobs in every category have requirements identical to or as rigorous as those listed in the DOT." *Moore*, 623 F.3d at 604 (internal citations omitted). Therefore, the Court finds that the vocational expert's testimony constituted substantial evidence in the record as a whole and could be relied upon by the ALJ at step 5 of the disability determination.

---

[2] The Dictionary of Occupational Titles ("DOT") is a guide from the United States Department of Labor regarding job ability levels that has been approved for use in Social Security cases. *See Fines v. Apfel*, 149 F.3d 893, 895 (8th Cir. 1998) (citing 20 C.F.R. § 404.1566(d)(1); *Porch v. Chater,* 115 F.3d 567, 571 (8th Cir.1997)). "The DOT is the Commissioner's primary source of reliable job information. The Commissioner uses the DOT to classify occupations as skilled, semiskilled or unskilled." *Fines*, 149 F.3d at 895 (internal citations omitted).

## IV. Conclusion

The Court finds that substantial evidence supports the ALJ's decision as a whole. As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only 'enough that a reasonable person would find it adequate to support the decision,' and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, No. 13-2269, 2014 WL 1797396 at *3 (8th Cir. May 7, 2014) (internal citations omitted). The Court cannot reverse merely because substantial evidence also exists that would support a contrary outcome, or because the court would have decided the case differently. *Id.* A review of the record as a whole demonstrates that Miller has some restrictions in his functioning and ability to perform work related activities, however, he did not carry his burden to prove a more restrictive RFC determination. *See Pearsall*, 274 F.3d at 1217 (it is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC). Therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 15, 28.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

Dated this 29th day of December, 2014.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE